IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERICKY ARNEZZ BOGUES #327-505
        Plaintiff             :

        v.                    :  CIVIL ACTION NO. CCB-10-3612

CORRECTIONAL MEDICAL SYSTEMS,[1] :
INC.
MONICA METHENY, R.N.          :
COLIN OTTEY, M.D.
KENNETH KRUG, CO II            :
        Defendants

## MEMORANDUM

### I. Procedural History

This 42 U.S.C. § 1983 prisoner civil rights action filed on December 17, 2010, seeks declaratory and injunctive relief[2] and damages for the alleged denial of proper medical care for a knee injury. Ericky Bogues ("Bogues") claims that poor medical care for a preexisting knee injury resulted in emergency surgery to replace the knee. He further contests the quality of care following the procedure, including the denial of antibiotics and pain medication. Bogues names as medical defendants the contractual health care provider, Correctional Medical Services, Inc. ("CMS") and CMS personnel Colin Ottey, M.D. and Monica Metheny, R.N.( hereinafter the "Medical Defendants"). Additionally, Bogues complains generally of poor conditions of

---

[1] The Clerk shall amend the caption of the docket to reflect the full and proper spelling of defendants' names.

[2] Bogues requests follow-up care for a procedure he described as "knee replacement" surgery. ECF No. 1 at 4, ¶ IV and 7-9. He also indicates that without emergency intervention mandating that he be given antibiotics he will develop gangrene and his "leg [will] be cut off." ECF No. 6. For reasons apparent herein, the injunctive relief requests have been rendered moot.

confinement following surgery and claims a correctional officer was indifferent to his weakened state after surgery when transporting Bogues back to prison.³

Counsel for correctional Officer Kevin Krug and the medical defendants have filed dispositive motions construed as motions for summary judgment. ECF Nos. 21 and 26. Bogues has filed opposition materials with regard to the medical defendants' motion. ECF Nos. 23.⁴ A hearing is not needed to resolve the constitutional issues presented. *See* Local Rule 105.6. (D. Md. 2010). For reasons which follow, defendants' motions shall be granted.

## II. Standard of Review

**Motion to Dismiss**

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, "because the court is testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions." *Takacs v. Fiore*, 473 F. Supp. 2d 647, 651 (D. Md. 2007).

---

³ Bogues also claims that on December 11, 2010, Correctional Officer Carpelli, while working at Western Correctional Institution, "sadisticly (sic) and forcefully snatched [his] crutches," causing Bogues to fall to the floor in pain. ECF No. 1 at 7 and ECF No. 6 at 2. This claim falls outside the scope of this lawsuit, which concerns medical treatment for a preexisting knee injury. Should Bogues wish to pursue a claim against Carpelli, he may do so by filing a separate action.

⁴ Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on April 19, 2011, Bogues was notified in writing that defendant Krug had filed a dispositive motion and was informed of the consequences of failing to oppose the motion. ECF No. 27. Bogues has chosen not to respond.

**Motion for Summary Judgment**

Under the December 10, 2010 revisions to Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

**Eighth Amendment Right to Medical Care**

In alleging a denial of his Eighth Amendment right to necessary medical care, Bogues must prove two essential elements. First, he must satisfy the "objective" component by

identifying a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If he proves this first element, Bogues must then prove the second "subjective" component of the Eighth Amendment standard by showing deliberate indifference on the part of Defendants. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Medical staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson*, 145 F.3d at 167.

**Administrative Exhaustion**

The Prison Litigation Reform Act ("PLRA") generally requires a prisoner to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision extends to Plaintiff's allegations. His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

### III. Analysis

#### Correctional Defendant Krug

Bogues claims defendant Krug subjected him to cruel and unusual punishment when he failed to secure him in a seatbelt during transportation following surgery. Krug contends that Bogues did not initiate exhaustion of administrative remedies prior to filing suit,[5] and further states that he did not cause Bogues injury.

Bogues does not counter Krug's claim that he failed to exhaust administrative remedies; thus, the claim cannot proceed here. Even if administrative exhaustion were completed, the claim fails, based on Krug's uncontroverted affidavit stating that on December 8, 2010, he assisted Bogues from his wheelchair into a prison van and secured him with a seatbelt prior to transportation from the Metropolitan Transition Center's infirmary to the dispensary at Western Correctional Institution. ECF No. 26, Exhibit 2. Nothing in the record supports Bogues's claim that Officer Krug violated his Eighth Amendment rights during transportation between correctional facilities.

#### Medical Defendant Correctional Medical Services, Inc.

To the extent the complaint names CMS in the alleged denial of medical care solely upon vicarious liability, the law in this circuit is clear. The doctrine of *respondeat superior* does not apply to 42 U.S.C. § 1983 claims. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715,

---

[5] *See* ECF No. 26, Exhibit 6.

727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir. 1982). The motion to dismiss filed on behalf of CMS shall be granted.

Medical Defendants Ottey and Metheny

Bogues entered the Division of Correction (DOC) on April 29, 2005.[6] Following classification, he was transferred to Roxbury Correctional Institution (RCI) on May 10, 2005, where he remained until his transfer to North Branch Correctional Institution (NBCI) on June 8, 2009. ECF No. 26, Exhibit 1 at 1-6, 10.

Bogues sustained a gunshot wound to the left knee prior to incarceration. The knee fracture was surgically repaired in 2006. ECF No. 21, Exhibit A, Affidavit of Colin Ottey, M.D. at 2, ¶3. Although Bogues's complaint suggests he developed a problem with his knee in 2009 (ECF No. 1 at 6), the record does not so indicate. On January 3, 2010, Bogues submitted a sick call request complaining of knee pain. On January 6, 2010, Renato Espina, M.D. examined Bogues for his complaint that a screw used in the original surgical repair "might be coming out thr[ough] his skin." ECF No. 21, Exhibit A at 2 ¶ 3. Dr. Espina noted Bogues could not flex his knee to 90 degrees and had mild pain with range of motion, but showed no swelling or warmth suggesting infection. Indomethacin, a non-steroidal anti-inflammatory medication ("NSAID") was prescribed, and Bogues was advised to follow up if he did not improve in thirty days. *Id.*, Exhibit B at 1-3.

On January 13, 2010, Robert Cendo, M.D., an orthopedic surgeon, told Bogues that he

---

[6] There is no provision in 42 U.S.C. §1983 regarding the time within which a complaint must be filed. It is well settled, however, that the applicable limitations period is the state limitations period for personal-injury torts. *See Wallace v. Kato,* 549 U.S. 384, 387 (2007), *Owens v. Okure,* 488 U.S. 235, 249-250 (1989); *Wilson v. Garcia,* 471 U.S. 261, 279-280 (1985). In Maryland, the applicable statute of limitations is three years from the date the cause of action accrues. *See* Md. Code Ann., Cts & Jud. Proc. § 5-101. Although Bogues complains generally that he has been provided inadequate treatment for his knee problem throughout his incarceration, he may recover damages only for inadequate care rendered during the three years prior to December 14, 2010, the date he signed his complaint.

could remove the hardware (a broken wire and two screws) from the knee, but such surgery might not eliminate the pain if the symptom was caused by degenerative changes. Bogues indicated removal of the hardware might help. *Id.*, Exhibit B at 4.

On January 25, 2010, Bogues complained of pain in his other (right) knee, stating he hit it. Greg Flury, P.A. examined Bogues on January 28, 2010, and found no deformity, heat, swelling, redness or fluid. Flury noted Bogues had pain-free flexion of the knee within normal limits, and prescribed ibuprofen, an NSAID, for pain. Bogues was advised to follow up in a month if his symptoms did not improve. *Id.*, Exhibit B at 5-7.

On January 30, 2010, Bogues again complained of right knee pain. Defendant Ottey examined Bogues on February 2, 2010, and found no effusion or swelling. Ibuprofen was again prescribed with follow-up in thirty days. On March 1, 2010, Bogues requested an x-ray. On March 4, 2010, Majd Arnaout M.D. evaluated Bogues and found both knees normal. Tylenol was prescribed for pain and Bogues's x-ray request was denied. Bogues's knees were again found to be normal following examination on March 17, 2010. *Id.*, Exhibit B at 8-15.

A request for outside consultation was made. On June 25, 2010, Ashok Krishnaswamy, M.D., an orthopedic surgeon at Bon Secours Hospital, examined Bogues and recommended he have surgery to remove the screws and wires previously used to repair his knee. These devices would be replaced with tension band wiring of the patella (knee cap). *Id.*, Exhibit B at 23-24.

While awaiting surgery, Bogues continued to complain of pain in the left knee. He was advised to exercise the knee and use rest, ice and elevation to relieve his pain. Range of motion was not impaired and Bogues's knee was not infected. Approval for surgery occurred on November 23, 2010. *Id.*, Exhibit B at 25-28.

On December 7, 2010, Bogues underwent exploratory surgery of the left knee.[7] Broken wires and screws were removed from the patella and a "reduction and fixation" of the patella was achieved using tension band wiring. A long leg splint was applied to prevent bending of the knee. Bogues was discharged from Bon Secours Hospital and admitted to the infirmary at Metropolitan Transition Center overnight. He was able to walk using crutches and was told not to change the dressing on the knee. *Id*., Exhibit B at 49-61 and 103-104. On December 8, 2010, Bogues was transferred to the infirmary at Western Correctional Institution for postoperative recovery. He was prescribed Oxycodone for one day following surgery and thereafter given Tylenol with codeine through December 18, 2010. The antibiotic Keflex was also prescribed through December 12, 2010.[8] A nurse noted on December 11, 2010, that Bogues was uncooperative and belligerent but ate his dinner and took his antibiotic and pain medications. *Id*., Exhibit B at 56-73.

The next day, Bogues threatened medical staff that he would throw urine, spit and attack them. On December 11, 2011, Dr. Ottey attempted to talk with Bogues, who was sitting on the infirmary floor. Bogues cursed Ottey and threatened to kill him. Ottey denies threatening Bogues physically or verbally or intimidating him in any way. *Id*., Exhibit A at 5, ¶ 12 and Exhibit B at 62-63.

On December 12, 2010, Bogues was educated about the care for the knee and given pain medication. Nurse Sarah Taylor, R.N. also gave Bogues hygiene items because he was unable to shower while the bandage was on his leg.[9] Later that evening defendant Metheny examined

---

[7] Bogues did not receive a knee replacement.

[8] Bogues complains that he was deprived of an antibiotic after his return to NBCI. The medical record indicates, however, that the antibiotic was to be given only a few days, and its use expired while Bogues was recovering at WCI.

[9] Plaintiff claims he was not bathed nor provided with clean clothing during this time. He does not indicate actual harm suffered as a result of such alleged deprivation.

Bogues and found good circulation and an intact bandage. Metheny provided Tylenol with codeine for pain and noted Bogues was using crutches for mobility. *Id*., Exhibit B at 62-72.

On December 13, 2010, P.A. Flury evaluated Bogues who complained of mild pain in the left knee. No problems were found. Flury discharged Bogues from the infirmary to return to his housing unit at NBCI, with orders to obstain from work and recreation. He was placed on feed-in-cell status, assigned to bottom bunk for 60 days, and directed to use crutches when leaving his cell for the next 60 days. *Id*.

Back at NBCI, Bogues complained on December 16, 2010, that "the doctor in NBCI won't give me [antibiotics.]" As the prescription for antibiotics had expired, additional antibiotics were not provided. Despite his concerns about gangrene and losing his leg, ECF No. 6 at 3, Bogues did not develop post-operative infection. *Id*., Exhibit B at 63-73 and 103-104.

On December 17, 2010, PA Schindler examined Bogues who complained that his knee went "out of place" following an altercation with a correctional officer and a separate incident resulting in a fall. *Id*., Exhibit B at 74-76 and 79. An x-ray revealed one screw in the knee might be out of place. *Id*., Exhibit B at 74-76. At the January 11, 2011, follow-up, Dr. Krishnaswany determined the x-ray showed displacement of the fracture fragments and wires in the left knee. That same day, Bogues underwent a revision of the reduction of the patella fracture. *Id*., Exhibit B at 84-87. His post-operative recovery followed a similar course to that provided following the December, 2010 surgery. *Id*., Exhibit B at 88-102, 105. As of January 31, 2011, Bogues indicated his knee "is fine." *Id*., Exhibit B at 107.

Bogues has failed to come forward with opposition materials refuting Defendants' affirmations. His dissatisfaction with the treatment provided to date amounts to nothing more than a disagreement between medical staff and an inmate as to a course of treatment, and does

not rise to a constitutional injury. Given the objective findings regarding Bogues's knee condition and the response by medical personnel to his condition, Bogues has failed to show a genuine issue of material fact as to his entitlement to money damages or other relief.

For the aforementioned reasons, the dispositive motions filed by defendants will be granted and Bogues's request for injunctive relief denied. A separate order follows.

Date: June 21, 2011                              /s/
                                        Catherine C. Blake
                                        United States District Judge